# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DEPARTMENT OF VETERANS
   AFFAIRS,

              Agency,

       v.

DENNIS CHIAPPETTA, JR.,

             Respondent.

DOCKET NUMBERS
CB-7521-16-0014-N-1
CB-7521-16-0014-T-1
CB-7521-18-0011-T-1

DATE: December 2, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Christina Knott</u>, Esquire, <u>Kimberly D. McLeod</u>, Esquire, <u>Richard Johns</u> and <u>Hansel Cordeiro</u>, Esquire, Washington, D.C., for the agency.

<u>Jeffrey L. Whiting</u>, Esquire, Buffalo, New York, for the agency.

<u>Peter B. Broida</u>, Esquire, Arlington, Virginia, for the respondent.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER AND ORDER DENYING REQUEST FOR A STAY[2]**

¶1        The respondent has filed a petition for review of the initial decision finding good cause for his removal from the position of Chief Veterans Law Judge (VLJ). *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-16-0014-T-1.  The respondent also has filed a motion for a protective order and to stay the implementation of his removal.  *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-16-0014-N-1.  Finally, the agency has filed a petition for review of a subsequent initial decision ordering corrective action for the respondent's complaint of unlawful removal.[3]  *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-18-0011-T-1.  These cases are hereby JOINED under 5 C.F.R. § 1201.36.  For the following reasons, both petitions for review and the respondent's motion are DENIED.  Except to MODIFY the administrative law judge's reliance on Model Rule 2.15 in finding good cause in MSPB Docket No. CB-7521-16-0014-T-1, we AFFIRM the initial decisions, which are now the Board's final decisions in these matters.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        The respondent was a Chief VLJ for the agency.  *Chiappetta*, MSPB Docket No. CB-7521-16-0014-T-1, Complaint File (0014 CF), Tab 25 at 55.  VLJs, including Chief VLJs, are members of the Board of Veterans' Appeals.  38 C.F.R.

---

[2] This is a Final Order in MSPB Docket Nos. CB-7521-16-0014-T-1 and CB-7521-18-0011-T-1 and an Order Denying Request for a Stay in MSPB Docket No. CB-7521-16-0014-N-1.

[3] Because of the different postures in which the joined cases came to the Board, the Department of Veterans Affairs was the petitioner in one case and the respondent in the other, and likewise with Mr. Chiappetta.  For ease of reference, this Final Order will in all contexts refer to the Department of Veterans Affairs as "the agency" and Mr. Chiappetta as "the respondent."

§ 20.101.[4]  As such, they may be removed subject to the same requirements as administrative law judges (ALJ) under 5 U.S.C. § 7521.  38 U.S.C. § 7101A(e)(2).  Under that section, a removal may be taken "only for good cause established and determined by the Merit Systems Protection Board."  5 U.S.C. § 7521(a), (b)(1).

¶3      On February 1, 2016, the agency filed a complaint with the Board under 5 C.F.R. § 1201.137(b), seeking the respondent's removal based on two charges: (1) conduct unbecoming a VLJ; and (2) misuse of Government resources. 0014 CF, Tab 1 at 4-9.  The conduct unbecoming charge was supported by nine specifications, all related to the respondent's participation with four other agency employees in an email group, which they had dubbed the "Forum of Hate" (FOH) *Id.* at 5-9, 131.  Essentially the FOH exchanged a large number of bigoted or otherwise inappropriate emails on Government time and with Government equipment.  *Id.* at 5-9.  The misuse of Government resources charge was supported by one specification alleging that the respondent misused Government resources when he used his Government email account to participate in the FOH. *Id.* at 9.

¶4      After a hearing, on November 9, 2017, the ALJ assigned to hear the complaint issued an initial decision finding good cause for the respondent's removal.  0014 CF, Tab 40, Initial Decision (0014 ID).  The ALJ found it undisputed that good cause existed for the agency to initiate some level of disciplinary action.  0014 ID at 12-16.  The parties did, however, dispute the appropriate level of discipline, and so the ALJ conducted a detailed analysis of the penalty issue, ultimately concluding that removal was the appropriate sanction.  0014 ID at 16-31.  The respondent has filed a timely petition for review, disputing the ALJ's penalty analysis.  *Department of Affairs v.*

---

[4] During the pendency of this appeal, effective February 19, 2019, the agency redesignated 38 C.F.R. § 19.2 to 38 C.F.R. § 20.101.  VA Claims and Appeals Modernization, 84 Fed. Reg. 138-01, 177 (Jan. 18, 2019).

*Chiappetta*, MSPB Docket No. CB-7521-16-0014-T-1, Petition for Review File (0014 PFR File), Tab 1. The agency has filed a response in opposition to the petition for review, and the respondent has filed a reply to the agency's response. 0014 PFR File, Tabs 4-5.

¶5　　　　Meanwhile, on November 20, 2017, despite the fact that the initial decision authorizing the respondent's removal had not yet become final, the agency issued the respondent a memorandum notifying him that he would be removed from service effective November 24, 2017. *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-16-0014-N-1, Stay File, Tab 2 at 5. On November 22, 2017, the respondent filed a motion for protective order and stay of the removal decision. *Id.* at 1-3. After the agency responded, the Clerk of the Board issued an order notifying the parties that the Board was operating with only one member and that it therefore lacked a quorum of two members as required to rule on the respondent's motion. Stay File, Tab 7. The Clerk of the Board informed the parties that a decision on the respondent's motion could not be issued until a quorum was restored. *Id.* at 2. Meanwhile, the agency removed the respondent, effective November 24, 2017. *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-18-0011-T-1, Complaint File (0011 CF), Tab 8 at 8.

¶6　　　　On January 5, 2018, the respondent filed a petition for writ of mandamus with the United States Court of Appeals for the Federal Circuit, asking the court to order the Board to rule on his motion. 0011 CF, Tab 1 at 126-56. Ultimately, the court dismissed the petition in light of the parties' stipulation that the respondent would file a complaint for unlawful removal, under 5 C.F.R. § 1201.142, raising the same matters presented by his motions, and that the Clerk of the Board would refer the matter to an ALJ for adjudication. *Id.* at 195-202.

¶7　　　　As stipulated, the respondent filed a complaint alleging that his November 24, 2017 removal was unlawful on the basis that it was taken not in accordance with the procedures of 5 U.S.C. § 7521 because there was not yet a

final decision by the Board authorizing the removal. *Id.* at 6-16. After further development of the written record, the assigned ALJ issued an initial decision granting the respondent's request for corrective action, ordering the agency to restore the respondent to his position retroactively, and directing the agency to provide him interim relief. 0011 CF, Tab 12, Initial Decision (0011 ID).

¶8 The agency has filed a petition for review of the initial decision, along with a motion to stay interim relief. *Department of Veterans Affairs v. Chiappetta*, MSPB Docket No. CB-7521-18-0011-T-1, Petition for Review File (0011 PFR File), Tabs 1-2. The respondent opposes the petition on substantive grounds and for failure to provide interim relief. 0011 PFR File, Tabs 3, 5. The agency has filed a response to the respondent's opposition, and the respondent has filed a reply to the agency's response. 0011 PFR File, Tabs 6-7.

## ANALYSIS

The respondent's petition for review is denied.

¶9 Under 5 U.S.C. § 7521 and 38 U.S.C. § 7101A(e)(2), the agency may take an adverse action against a VLJ only for good cause established and determined by the Board. Here, the respondent does not dispute that good cause exists to discipline him. Rather, "[t]he question is what, if any, penalty should be imposed." 0014 CF, Tab 29 at 44.

¶10 In determining the appropriate penalty in an original jurisdiction case filed under 5 U.S.C. § 7121, the Board is guided by the principles set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).[5] *Social Security Administration v. Burris*, 39 M.S.P.R. 51, 64 (1988), *aff'd*, 878 F.2d 1445 (Fed. Cir. 1989) (Table). In *Douglas*, the Board established a totality of the circumstances approach to the issue of penalty and set forth a list of 12 nonexhaustive factors that are generally relevant to such a determination. 5 M.S.P.R. at 305-06. The Board will consider whatever evidence of record

---

[5] Neither party to this case contends that a different standard should apply.

affects the charge and penalty. *Social Security Administration v. Glover*, 23 M.S.P.R. 57, 79 (1984).

*American Bar Association Model Code of Judicial Conduct*

¶11    Although he found that the issue of good cause was not in dispute, the ALJ nevertheless found it appropriate to review the facts establishing good cause. 0014 ID at 12. In doing so, he considered the American Bar Association's (ABA) Model Code of Judicial Conduct, upon which the agency also relied in establishing good cause in its complaint. 0014 ID at 11, 15; 0014 CF, Tab 1 at 11-13; *see Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 41 (2010) (finding the ABA Model Code of Judicial Conduct to be an appropriate guide for evaluating the conduct of ALJs), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011). He found that the respondent's actions and inactions violated ABA Model Rule 1.2, which provides that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." 0014 ID at 12, 15. He further found that the respondent's failure to report offensive emails sent by other FOH members violated Model Rule 2.15, which sets forth requirements to report certain misconduct by other judges and attorneys. *Id.*

¶12    On review, the respondent objects to the ALJ's use of Model Rule 2.15 on the basis that the agency did not rely on it in the complaint. 0014 PFR File, Tab 1 at 15. We agree. Our review of the record reveals no mention of Model Rule 2.15 until the issuance of the initial decision. Therefore, in arriving at our decision, we have not considered whether the respondent violated this rule.

¶13    Although the respondent's arguments concerning the Model Code pertain chiefly to Model Rule 2.15, he also appears to argue that the ALJ treated his violation of Model Rule 1.2 as an aggravating factor in the penalty analysis, and that the ALJ erred in doing so. 0014 PFR File, Tab 1 at 14-16. We are not

convinced by this argument. First, the respondent does not explain why he believes that his violation of Model Rule 1.2 should not have figured into the penalty determination. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980). Second, the ALJ does not appear to have considered the violation of Model Rule 1.2 as an aggravating factor, although he did mention it in assessing the nature and seriousness of the offense. 0014 ID at 17. The ALJ considered this matter primarily in connection with his good cause determination, and we find that it was completely appropriate for him to do so. 0014 ID at 11-12, 15; *see Long v. Social Security Administration*, 635 F.3d 526, 535 (Fed. Cir. 2011). Nevertheless, we find that the respondent's violation of Model Rule 1.2 is far less instructive on the issue of penalty than it is on good cause because the Model Rule is written so broadly that nearly any sort of actionable misconduct could fall within its purview. Although this fits well with the good cause standard, which is itself quite broad, *see Long*, 635 F.3d at 535-36, the mere fact that the respondent violated Model Rule 1.2 tells us almost nothing about the particular circumstances of his case, *cf. McGowan v. Department of the Air Force*, 28 M.S.P.R. 314, 317 (1985) (explaining that the Board tailors its penalty analysis to the unique circumstances of each case). We therefore find that the respondent's violation of Rule 1.2 of the ABA Model Code of Judicial Conduct carries little weight in the penalty analysis.

> *Nature and Seriousness of the Offense and the Nature of the Respondent's Employment*

¶14     In making its penalty determination, the Board will consider first and foremost the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated. *Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶ 18 (2009), *aff'd*, 383 F. App'x 939 (Fed. Cir. 2010); *Douglas*, 5 M.S.P.R. at 305. The Board has traditionally placed primary

importance on this penalty factor.  *Vaughn v. U.S. Postal Service*, [109 M.S.P.R. 469](), ¶ 15 (2008), *aff'd*, 315 F. App'x 305 (Fed. Cir. 2009).

¶15     In this case, the respondent attempts to downplay the nature and seriousness of his misconduct.  He argues that out of the 103 emails at issue in the complaint, he sent only 9 of them and, of these, only 1 contained objectionable material–an email referencing the Ku Klux Klan, stating that a particular youth baseball team should be called "The Maryland White Sheets."[6]  0014 PFR File, Tab 1 at 5-7; 0014 CF, Tab 1 at 6-9.  The remainder of the offensive emails were sent by the other FOH members, and the respondent maintains that his replies to these were either innocuous or nonresponsive.  0014 PFR File, Tab 1 at 4-8.  The respondent further argues that he was never a supervisor or manager of the other FOH members, but he did counsel them numerous times to stop sending objectionable emails.  *Id.* at 4, 8-13, 21-22.

¶16     We agree that the respondent was not a particularly active member of the FOH and that he sent one offensive and racist email.  However, the complaint pertains chiefly to the respondent's failure to take appropriate action to put a stop to his colleagues' conduct.  0014 CF, Tab 1 at 6-9.  Although the respondent may not have been in any of the other FOH members' direct chain of command, he was the highest ranking member of the FOH (the others being staff attorneys and a VLJ) and his tacit participation in the group fostered an environment that

---

[6] This email exchange read as follows after one FOH member emailed the others a picture of an all Caucasian children's baseball team:

> Attorney CH: First baseball practice.  Not a Charo [Hispanic], Adrian [African-American], or BD [Asian] in the bunch.  Yes, Americana.

> VLJ JM:  Nice but where are the white sheets?  Gotta start them when they are young.

> Respondent:  Come on James, that is the name of the kids team: "The Maryland White Sheets."

> VLJ JM:  Of course my bad, [bonfire] after every victory.

0014 CF, Tab 24, VA Ex. 1 at 261; Hearing Transcript, Volume 2 at 228-29.

allowed it to persist. 0014 CF, Tab 1 at 138. Furthermore, we agree with the ALJ that the respondent's counseling of the other FOH members appears to have been more about not getting caught than about supporting a culture of respect and propriety. 0014 ID at 19; 0014 CF, Tab 25 at 33-37. In fact, the respondent advocated for carrying out FOH activities over private email accounts—a suggestion that the other FOH members apparently declined to adopt. 0014 CF, Tab 25 at 35. In addition, at least some of the respondent's emails were calculated to urge the others on: "OUTSTANDING" in response to a series of racist or otherwise offensive jokes, and "Ohhh. How's that funny or hateful? This ain't the forum of yawn." 0014 CF, Tab 1 at 418, Tab 25 at 10-13.

¶17 Considering the evidence as a whole, we find that the respondent's participation in the FOH exhibited a marked lack of judgment over a significant period of time. He sent inconsistent messages to the group by occasionally counseling them against their offensive emails while at the same time doing nothing effective to stop them, and sometimes expressing approbation. We acknowledge that the respondent had misgivings about the FOH email traffic and that doing something concrete to stop it would risk him alienating some friends and colleagues. 0014 PFR File, Tab 1 at 9, 11-12. However, this is exactly the kind of situation that agency leadership is expected to face with resolve and fortitude. The respondent's position, Chief VLJ, is one of great importance and prominence; a Chief VLJ not only issues final agency decisions on important veterans' benefit cases, he manages a staff consisting of dozens of attorneys and VLJs, and he is appointed to his position by the President of the United States. Hearing Transcript (Tr.), Volume (Vol.) 1 at 81-92 (testimony of the Director of Management, Planning, and Analysis). The respondent had dozens of opportunities over the course of several years to confront this situation properly, yet he failed to do so. For these reasons, we agree with the ALJ that the respondent's offense was serious as it pertains to his position. 0014 ID at 20-21.

*Respondent's Past Disciplinary and Work Record*

¶18    In his initial decision, the ALJ acknowledged the respondent's long and unblemished work history with the agency.  0014 ID at 21.  On petition for review, the respondent emphasizes this work history and argues that it weighs strongly in favor of mitigation.  0014 PFR File, Tab 1 at 17-20.  We agree. Instant misconduct aside, the respondent has been an exemplary agency employee for 20 years, well-liked by his colleagues, with a spotless disciplinary record and consistently outstanding work performance.  0014 CF, Tab 24 at 17-46, Tab 25 at 55-92; Tr., Vol. 1 at 27 (testimony of the Deputy Secretary), Vol. 2 at 21 (testimony of the respondent); *see Gill v. Department of Defense*, 92 M.S.P.R. 23, ¶ 27 (2002) (considering 20 years of service and good performance as a mitigating factor); *Douglas*, 5 M.S.P.R. at 305.  The nature of the respondent's history with the agency is not in dispute, and we find that it is an important factor to consider in the penalty analysis.

*The Respondent's Ability to Perform and his Supervisors' Confidence in Him*

¶19    In his initial decision, the ALJ found that, although the charges do not bear on the respondent's technical ability to perform his job duties, his supervisors have lost trust and confidence in him.  0014 ID at 22-23.  In particular, he noted the testimony of the respondent's second-line supervisor, who stated that even one inappropriate email from someone in the respondent's position would be enough for him to lose all credibility.  0014 ID at 22; Tr., Vol. 1 at 123-24 (testimony of the second-line supervisor).  He also noted the testimony of the respondent's first-line supervisor, who stated that the respondent's actions have completely broken his trust and that he is concerned about the respondent's ability to handle matters appropriately and maintain good relationships with his coworkers.  0014 ID at 22; Tr., Vol. 1 at 198, 215 (testimony of the first-line supervisor).

¶20    On petition for review, the respondent points out that, after the events surrounding the FOH came to light, the agency had him work on a detail assignment to compile stock language for VLJs to use in addressing common veterans' benefit issues.  0014 PFR File, Tab 1 at 24-25.  He argues that the assignment has gone well and that it demonstrates his continued ability to perform at an acceptable level.  *Id.*  The respondent also argues that there is no basis for his first-line supervisor's stated concern about his relationship with other employees; no employees ever raised any concerns to him, but to the contrary they support the respondent's continued employment.  *Id.* at 25.

¶21    We have considered these arguments, but we find that they do not warrant a lesser penalty under all the circumstances.  Regarding the detail assignment, although it appears to be undisputed that the respondent's performance in it was generally successful, this evidence goes chiefly to his technical skills to perform his job, which are not in doubt.  0014 ID at 22.  However, the agency proved that, despite the respondent's technical skills and ability, his misconduct raises serious questions about his ability to handle matters appropriately as a VLJ and his relationships with other employees.  Regarding the supervisor's concerns about the respondent's relationships with his coworkers, it is true that these are not grounded in any coworker complaints.  Tr., Vol. 1 at 221 (testimony of the first-line supervisor).  However, we still find that these concerns are reasonable, especially considering that the very misconduct at issue grew out of a dysfunctional relationship between the respondent and several of his coworkers.  Beyond that, we find that the supervisors' loss of trust in the respondent is reasonable in light of the marked and continuous lack of judgment that he exhibited for the full duration of his participation in the FOH.  Loss of trust and confidence is a significant aggravating factor in a penalty determination. *Talavera v. Agency for International Development*, 104 M.S.P.R. 445, ¶ 12 (2007).

*Table of Penalties*

¶22    In his initial decision, the ALJ found that removal was consistent with the agency's table of penalties, which provides a penalty range of reprimand to removal for a first offense of using disrespectful, insulting, abusive, insolent, or obscene language to or about supervisors or other employees.  0014 ID at 24-25; 0014 CF, Tab 1 at 149.  On petition for review, the respondent argues that the table of penalties is "of no use" because a range of reprimand to removal applies for a first offense in any applicable category of misconduct.  0014 PFR File, Tab 1 at 29.  We agree with the respondent that the table of penalties is of limited use to the Board in arriving at a penalty determination, but we also agree with the ALJ's finding that it did not foreclose removal.  0014 ID at 25.

*Consistency of the Penalty*

¶23    The respondent proffered one of the other FOH members as a comparator for penalty purposes, arguing that this individual, like him, sent a minimal number of offensive emails and was given a 2-week suspension.  0014 CF, Tab 29 at 49, Tab 30.  The ALJ found that this employee was a staff attorney and therefore not comparable to the respondent, who is a Chief VLJ.  0014 ID at 23-24.  The respondent does not challenge this finding on review, and we agree with the ALJ's analysis of this issue.  Moreover, even if the proffered comparator were similarly situated to the respondent, consistency of the penalty is only one factor among many for the Board to consider, and we find that it would not be of sufficient weight under the facts of this case to warrant mitigation.  *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 18.

*Notoriety of the Offense*

¶24    In his initial decision, the ALJ found that the facts of the respondent's case were public knowledge and that the story had been covered by several news outlets.  0014 ID at 25-26; 0014 CF, Tab 24 at 476-513.  He further found that

there was the potential for additional adverse publicity as the respondent's appeal progressed. 0014 ID at 26. On petition for review, the respondent argues that at least some of the publicity—that from the Wall Street Journal—was of the agency's own making and that the agency did not rely on publicity or notoriety in bringing its complaint. 0014 PFR File, Tab 1 at 29.

¶25    We disagree. First, we find that the agency's actions did not occasion the Wall Street Journal article. As the ALJ correctly found, the agency issued a press release only after learning that the paper was about to run the story and receiving a request for comment about it. 0014 ID at 24; 0014 CF, Tab 24 at 481, 508-10; Tr., Vol. 1 at 35 (testimony of the Deputy Secretary). We also find that the agency did, in fact, rely on the notoriety of the offense in bringing the complaint. The *Douglas* factor checklist attached to the complaint indicates that the notoriety of the offense and its effect on the reputation of the agency would be considered an aggravating factor. 0014 CF, Tab 1 at 19; *cf. Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶ 15 (2004) (stating that the notice requirement is satisfied when the proposal and any attachments to it, taken together, provide the employee with specific notice of the charges against him so that he can make an informed and meaningful reply). We find that the significant publicity that this case has garnered is an aggravating factor. *See Bilger v. Department of Justice*, 33 M.S.P.R. 602, 611 (1987), *aff'd*, 847 F.2d 842 (Fed. Cir. 1988) (Table).

*Clarity with which the Respondent Was on Notice*

¶26    On petition for review, the respondent argues that he was not clearly on notice of any obligation to report the inappropriate FOH emails because the agency has no policy on the matter. 0014 PFR File, Tab 1 at 20. We agree with the respondent that the agency does not appear to have any written policy covering this specific situation, but we also agree with the ALJ that the respondent knew all along that the FOH email traffic was improper. 0014 ID at 26-28. The respondent not only completed numerous trainings touching on

these issues, 0014 CF, Tab 24 at 189-94; Tr., Vol. 2 at 269-77 (testimony of the respondent), we find that no specific instruction should have been required for the respondent to understand how to handle this matter appropriately. This is not a situation wherein the respondent ran afoul of an idiosyncratic and nonobvious agency rule. *Cf. Gunn v. U.S. Postal Service*, 13 M.S.P.R. 576, 578-79 (1982).

*Potential for Rehabilitation*

¶27        In his initial decision, the ALJ briefly acknowledged that the respondent was unlikely to commit a similar offense in the future. 0014 ID at 28-29. By contrast, the respondent's petition for review places great emphasis on his potential for rehabilitation. PFR File, Tab 1 at 10, 16-17, 21-22, 28. The respondent's rehabilitative potential is not the only factor for the Board to consider in arriving at its penalty determination. *Social Security Administration v. Davis*, 19 M.S.P.R. 279, 283, *aff'd*, 758 F.2d 661 (Fed. Cir. 1984). It is, however, an important factor, and we find that rehabilitative potential in this case is present. During agency proceedings, the respondent expressed remorse and acknowledged that he should have handled things differently. Tr., Vol. 1 at 32 (testimony of the Deputy Secretary); *see Williams v. Government Printing Office*, 7 M.S.P.R. 183, 185 (1981) (finding that the appellant's numerous apologies, among other things, augured well for his rehabilitative potential). Furthermore, the Deputy Secretary opined that the respondent would be very unlikely to repeat the same misconduct in the future. 0014 ID at 28; Tr., Vol. 1 at 33; *see Wentz v. U.S. Postal Service*, 91 M.S.P.R. 176, ¶ 24 (2002). Nevertheless, we find that the evidence of rehabilitative potential is tempered by the respondent's continued efforts to deflect the blame to other FOH members and his apparent failure to recognize that his own participation, however tacit, fostered the conditions for the group's existence. Tr., Vol. 2 at 101-57; *see Betz v. General Services Administration*, 55 M.S.P.R. 424, 428, 431 (1992).

*Lesser Alternative Sanctions*

¶28    In his initial decision, the ALJ found that, if the respondent were to return work at the agency, he probably would amend his email behavior, and that a lengthy suspension would be sufficient to deter such misconduct by the respondent and others.  0014 ID at 30.  He further found, however, that the penalty of removal would be even more effective in deterring others from committing similar misconduct.  *Id.*  On petition for review, the respondent argues that the ALJ is attempting to make an example of him and that the Board has traditionally frowned upon exemplary punishment.  0014 PFR File, Tab 1 at 25-27.  He argues that, in light of the nature of his misconduct, his rehabilitative potential, and the agency's policy of progressive discipline, demotion to a nonsupervisory position would be more appropriate.  *Id.* at 21-22, 27-29.

¶29    We agree with the respondent that exemplary punishment is generally contrary to the principles set forth in *Douglas*, which call for the Board to focus on the individual circumstances and offenses of the employee being disciplined. *Perez v. U.S. Postal Service*, 48 M.S.P.R. 354, 357-58 (1991).  Nevertheless, it is appropriate under *Douglas* to consider the deterrent effect that a lesser penalty would have on others.  *Harper v. Department of the Air Force*, 61 M.S.P.R. 446, 448 (1994); *Douglas*, 5 M.S.P.R. at 305-06.  This means simply that deterrence is one of the factors that may be considered in selecting a penalty but that the Board may not decide to make an example of an individual irrespective of the other *Douglas* factors.  *See Harper*, 61 M.S.P.R. at 448.  Reviewing the initial decision as a whole, we find that the ALJ considered all of the appropriate penalty factors in arriving at his decision.  0014 ID at 16-32.  In any event, even excluding deterrence as a factor entirely, upon consideration of all the relevant *Douglas* factors and the particular circumstances, we find that removal is the appropriate penalty for the respondent's misconduct.

¶30     The respondent's misconduct is severe and, as explained in the initial decision, raises serious questions about his capability to render fair, impartial, and unbiased decisions as an administrative adjudicator. 0014 ID at 20, 31. Given the bigoted overtones of the FOH activity, the respondent's unwillingness to stop it despite his position of prominence, the negative publicity that this case has already garnered, and the deleterious effect that the respondent's retention would have on the agency's reputation if he continued on in any sort of adjudicatory role, we find that the agency has shown good cause for his removal.

The respondent's motion to stay his removal and for a protective order is denied as moot.

¶31     As set forth above, the agency removed the respondent during the pendency of his petition for review of the initial decision that found good cause for his removal, and the respondent filed a motion to stay the removal and for a protective order to prevent the agency from removing him absent final authorization from the Board. *Supra* ¶ 5; *see* Stay File, Tab 1. Such a motion is not contemplated by the Board's regulations. *See* 5 C.F.R. §§ 1201.114(a), .140(a)(2). The proper method for seeking relief under these circumstances would be to file a complaint with the Board under 5 C.F.R. § 1201.142. As explained below, the respondent did file such a complaint, and pursuant to that complaint he is receiving all of the relief that he was seeking with his motion. Accordingly, the motion to stay and for a protective order is denied as moot.

The agency's petition for review is denied.

¶32     As set forth above, the respondent filed a complaint against the agency for removing him from his position on November 24, 2017 without authorization. *Supra* ¶ 7; 0011 CF, Tab 1, Tab 8 at 8. The ALJ granted corrective action and ordered the agency to restore the respondent to his position retroactively and to grant him interim relief in the event that either party petitioned for review. 0011 ID. The agency has not provided the respondent with interim relief, but it has filed a petition for review. 0011 PFR File, Tab 2.

*Agency's Motion to Stay Interim Relief*

¶33     Prior to filing its petition for review, the agency filed a motion to stay interim relief.  0011 PFR File, Tab 1.  Although the propriety of interim relief may be challenged, neither the applicable statute nor the Board's regulations contemplate that the Board may stay interim relief or entertain an agency's motion for such a stay.  *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 10 (2013).  The agency's motion is denied.  *Id.*

*Respondent's Motion to Dismiss the Petition for Review*

¶34     When, as here, the respondent was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing interim relief or by making a determination that returning the respondent to the place of employment would cause undue disruption to the work environment.  5 C.F.R. § 1201.116(a).  When an agency fails to submit the required certification with its petition, the petition may be dismissed with prejudice.  *See* 5 C.F.R. § 1201.116(e).

¶35     In this case, it is undisputed that the agency has not complied with the interim relief order, and the respondent has moved to dismiss the petition for review on that basis.  0011 PFR File, Tab 2 at 15, Tab 3 at 22-23.  The agency does, however, challenge the propriety of interim relief.  0011 PFR File, Tab 2 at 8-14.  Although the Board could dismiss the petition due to the agency's noncompliance with the interim relief order, we exercise our discretion not to do so both because the agency's challenge to interim relief is intertwined with its challenge to the merits of the initial decision and because the respondent will not be prejudiced if we consider the petition on the merits; as explained below, the petition does not meet the criteria for review under 5 C.F.R. § 1201.115.  *See Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 16 (2015) (explaining that the Board's authority to dismiss an agency petition under

5 C.F.R. § 1201.116(e) is discretionary, not mandatory). The respondent's motion to dismiss is denied.

*The Agency's Petition for Review*

¶36      In his initial decision, the ALJ found that the respondent's November 24, 2017 removal was an action covered under 5 U.S.C. § 7521, for which the agency was required to obtain prior authorization from the Board. 0011 ID at 13. He further found that the agency took the removal action without receiving prior authorization from the Board, i.e., a final Board decision authorizing the removal. 0011 ID at 13-19. He therefore reversed the removal and ordered the agency to retroactively restore the respondent to his position. 0011 ID at 19. On petition for review, the agency argues that its removal action was authorized under 5 U.S.C. § 7521 and that the ALJ erred in finding that the removal occurred prior to authorization under that section. 0011 PFR File, Tab 2.

¶37      The agency makes several arguments on review, but the essence of all of them is that the ALJ's initial decision finding good cause for removal constituted sufficient authorization for it to remove the respondent. *Id.* at 6-14. We disagree. Section 7521 of Title 5 of the United States Code provides that the agency may remove a VLJ "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." No such determination had been made at the time the agency effected the respondent's removal. The ALJ's initial decision may *become* the final decision of the Board if neither party petitions for review within 35 days or if a petition for review is timely filed and the Board denies the petition. 5 C.F.R. §§ 1201.113, .140(a)(2). Alternatively, the Board may reach a final decision by granting a petition for review or reopening or dismissing the case. 5 C.F.R. § 1201.113(c). Unless and until one of these conditions is met, the Board has not issued a final decision, and it has therefore not made a determination of good cause. Here, the agency effected the respondent's removal only 20 days after the

issuance of the initial decision, before it could have become final, and the respondent subsequently filed a timely petition for review. Thus, the agency lacked the requisite final Board decision to take an action pursuant to section 7521 procedures.

¶38     As for some of the agency's more specific arguments, it points out the Board's regulations previously provided that an ALJ would issue a "recommended" initial decision, but the regulations have since been amended to remove the word "recommended." 0011 PFR File, Tab 2 at 6-7. *Compare* 5 C.F.R. § 1201.135(a) (1997), *with* 5 C.F.R. § 1201.140(a)(2) (1998). The effect of this amendment was to allow initial decisions in section 7521 cases to become final without further action from the Board. In other words, section 7521 cases were made subject to the normal petition for review process applicable to cases within the Board's appellate jurisdiction. *See Social Security Administration v. Carr*, 78 M.S.P.R. 313, 318 n.1 (1998), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999). *Compare* 5 C.F.R. §§ 1201.135-.136 (1997), *with* 5 C.F.R. § 1201.140(a)(2) (1998). Nothing about that process suggests that initial decisions become the decisions of the Board before the conditions of 5 C.F.R. § 1201.113 are satisfied.

¶39     The agency also argues that the respondent's complaint is a collateral attack on the initial decision finding good cause for his removal. 0011 PFR File, Tab 1 at 8. This is simply not true. The respondent is not contesting the ALJ's previous good cause determination in this complaint; he is merely contesting the agency's decision to remove him before that initial decision became final. Furthermore, contrary to the agency's assertion, the controlling issues in the respondent's complaint are not determined by the outcome of the agency's original complaint, as should be evident from reading the respective initial decisions. 0011 PFR File, Tab 2 at 8.

¶40     The agency further argues that, by the logic of the initial decision, "the filing of a petition for review could act as an automatic stay for <u>any</u> decisions or orders made by [Merit Systems Protection Board] ALJs - - an untended [sic]

consequence." 0011 PFR File, Tab 2 at 13. The agency offers no support for its assertion that this consequence is unintended. Indeed, this consequence is intended, and it is explicitly recognized in the Board's enforcement regulations, which provide that the Board will only enforce an order after it becomes final. 5 C.F.R. § 1201.182(b); *see Dean v. Department of the Army*, 57 M.S.P.R. 296, 300 (1993).

¶41    Finally, the agency argues that, as the prevailing party in the initial decision, it should be entitled to the relief provided in the initial decision effective the date it is issued. 0011 PFR File, Tab 2 at 13-14. Although there might be policy reasons to support the agency's argument, the agency's policy preferences do not permit us to ignore the plain language of the statute, which as explained above, requires the agency to await a good cause determination "by the Board" before removing the respondent. 5 U.S.C. § 7521; *see Garza v. Office of Personnel Management*, 83 M.S.P.R. 336, ¶ 17 (1999) (citing *Commissioner v. Lundy*, 516 U.S. 235, 251-52 (1996)), *aff'd*, 250 F.3d 763 (Fed. Cir. 2000) (Table). The agency is essentially arguing that the favorable initial decision entitled it to interim relief, but Congress explicitly limited the availability of interim relief to employees and applicants for employment.[7]    5 U.S.C. § 7701(b)(2).

---

[7] Given the respondent's misconduct in this case, we appreciate the agency's interest in removing him from its employment rolls as soon as practicable. But the Federal Government cannot operate outside the law. The respondent may ultimately be entitled to a significant amount of back pay and benefits in this case, but this is due solely to the strictures of the operative statute and the circumstances of a lack of Board quorum for a prolonged period of time. Ordinary adverse actions taken under 5 U.S.C. chapter 75, subchapter II, are effective immediately regardless of any subsequent Board appeal, but adverse actions against ALJs and VLJs are governed by 5 U.S.C. chapter 75, subchapter III, which requires final Board approval before they can become effective. Any award of back pay and benefits may be attributed to this Board's commitment to the Merit Systems and to the rule of law—not to any sympathy with the respondent's conduct.

**ORDER**

CB-7521-18-0011-T-1

¶42 We ORDER the agency to cancel the respondent's November 24, 2017 removal and to restore him to duty retroactive to that date. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶43 We also ORDER the agency to pay the respondent the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the respondent to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the respondent the undisputed amount no later than 60 calendar days after the date of this decision.

¶44 We further ORDER the agency to tell the respondent promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The respondent, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶45 No later than 30 days after the agency tells the respondent that it has fully carried out the Board's Order, the respondent may file a petition for enforcement with the Office of the Clerk of the Board, if the respondent believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the respondent believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(b).

¶46 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

CB-7521-16-0014-T-1

¶47    The Board authorizes the agency to remove the respondent for good cause shown, pursuant to 5 U.S.C. § 7521. Such removal shall be effective on or after the date of this Final Order.

**NOTICE TO THE RESPONDENT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the Clerk of the Board.

**NOTICE OF APPEAL RIGHTS FOR
MSPB DOCKET NOS. CB-7521-16-0014-T-1 AND CB-7521-18-0011-T-1**[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3)** **<u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under <u>5 U.S.C. § 2302</u>(b)(8) or other protected activities listed in <u>5 U.S.C. § 2302</u>(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.



FOR THE BOARD: _____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.